FILED by _____ **JA** D.C.

**Aug 31, 2020**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

# 20-20190-CR-BLOOM/LOUIS
### CASE NO. _____

**18 U.S.C. § 1349**
**18 U.S.C. § 1001(a)(2)**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(2)(A)**

**UNITED STATES OF AMERICA**

**vs.**

**YVELICE VILLAMAN-BENCOSME,**
**LISETT RAVENTOS,**
**MAYTEE LLEDO, and**
**JESSICA PALACIO,**

        **Defendants.**
_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### *The Federal Food, Drug, and Cosmetic Act*

1.      The United States Food and Drug Administration ("FDA") was the agency of the United States charged with responsibility for protecting the health and safety of the American public by enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA"). Among other purposes, the FDCA was designed to ensure that drugs sold for human use were safe and effective, and that clinical trials undertaken to test experimental drugs were conducted honestly and safely.

2.      A "clinical trial" was an investigation involving one or more human subjects intended to determine the safety or effectiveness of an experimental drug. 21 C.F.R. § 312.3(b).

3.     A "sponsor" was a pharmaceutical company, government agency, or other organization that initiated and took responsibility for a clinical trial but did not typically conduct the clinical trial. 21 C.F.R. § 312.3(b).

4.     A "contract research organization" was an organization retained by a sponsor to manage various aspects of a clinical trial, including recruitment of clinical investigators and study sites for a clinical trial. 21 C.F.R. § 312.3(b).

5.     Sponsors typically initiated clinical trials for purposes of submitting the resultant data to the FDA.  Among other things, sponsors submitted such data to the FDA in support of applications seeking FDA approval to market new drugs within the United States.  The FDA relied on the veracity of clinical trial data to make significant decisions concerning the safety and efficacy of new drugs, with the ultimate goal of ensuring that all FDA-approved drugs were safe and effective for their approved indications.

6.     Prior to beginning a clinical trial, a sponsor was required to provide the FDA with extensive information regarding the proposed study, including a detailed investigational plan known as a "protocol." 21 C.F.R. § 312.23(a)(6).  The protocol described, among other things, the criteria for individuals to participate in the study as subjects (known as eligibility criteria), schedules of tests and procedures, drug and dosage regimens, the length of the study, and the outcomes that would be measured by the study. 21 C.F.R. § 312.23(a)(6).  Clinical trials were required to be conducted according to the protocol. 21 C.F.R. § 312.53(c)(1)(vi)(a).

7.     A "clinical investigator" was an investigator, typically a physician, with responsibility for actually conducting a clinical trial and under whose immediate direction an experimental drug was to be administered or dispensed to a subject. 21 C.F.R. § 312.3(b).  A clinical investigator was responsible for ensuring that clinical trials were conducted according to

the protocol and applicable FDA regulations. 21 C.F.R. §§ 312.53(c)(1)(vi)(a) & (b). Before beginning a clinical trial, a clinical investigator was required to provide the sponsor with a signed Form FDA 1572, in which the clinical investigator agreed to abide by the terms of the protocol and all applicable FDA regulations. 21 C.F.R. § 312.53(c)(1).

8.    FDA regulations imposed a number of requirements on clinical investigators, including the obligation to prepare and maintain adequate and accurate case histories that recorded all observations and other data pertinent to the investigation on each subject administered an experimental drug. The case histories were required to include, among other things, informed consent forms and medical records. 21 C.F.R. § 312.62(b).

9.    FDA regulations also required clinical investigators to maintain adequate records concerning the disposition of study drugs, including dates and quantities of drugs dispensed to subjects. 21 C.F.R. § 312.62(a).

### The Defendants

10.    Defendant **YVELICE VILLAMAN-BENCOSME** was a resident of Hialeah, Florida, and licensed to practice as a medical doctor in the State of Florida. From in or around October 2013, and continuing through in or around November 2016, **VILLAMAN-BENCOSME** served as a clinical investigator at Unlimited Medical Research, LLC ("UM Research"), a medical clinic located at 85 Grand Canal Drive, Suite 107, Miami, Florida, that conducted clinical trials on behalf of pharmaceutical company sponsors. **VILLAMAN-BENCOSME** also operated Sacred Heart Medical Office P.A., a private medical practice located at 17900 NW 5th Street, Suite 103, Pembroke Pines, Florida.

11.    Defendant **LISETT RAVENTOS** was a resident of Cutler Bay, FL, and Miami, FL. From in or around November 2013, and continuing through in or around March 2016,

**RAVENTOS** served as a study coordinator at UM Research.

12.    Defendant **MAYTEE LLEDO** was a resident of Hialeah, Florida. From in or around December 1996, and continuing through in or around April 2016, **LLEDO** was employed as a receptionist at Sacred Heart Medical Office P.A.

13.    Defendant **JESSICA PALACIO** was a resident of Miami, Florida.  From in or around December 2013, and continuing through in or around August 2015, **PALACIO** served as a study coordinator at UM Research.

### *The Sponsor and its Clinical Trial*

14.    The Sponsor ("Sponsor") was a drug manufacturer that developed, investigated, and manufactured drugs for commercial distribution in the United States.  Part of its business was investigating new drugs through clinical trials regulated by the FDA.

15.    The Study ("Study") was a clinical trial initiated by the Sponsor, which was designed to evaluate the safety and efficacy of an investigational drug intended to treat pediatric asthma in children between the ages of 4 and 11 with persistent asthma.

16.    The Contract Research Organization ("CRO") was a contract research organization that hired clinical investigators and managed clinical trials for sponsors.  The Sponsor retained the CRO to manage various aspects of the Study.  Among other things, the CRO was responsible for hiring clinical investigators and study sites to conduct the Study in strict compliance with the Study protocol and all applicable laws and regulations.

17.    Among other things, the Study protocol required subjects to make periodic scheduled visits to the clinical trial site.  The protocol further required that, during some of these visits, subjects would complete asthma control tests and receive physical exams by clinical trial staff.

18.     The Study protocol also required parents of the Study subjects to use an "e-diary" system to report the subjects' daily experience with the experimental drug in the Study. Specifically, parents of the Study subjects were required to make daily phone calls to a toll-free number maintained by the CRO.  Upon calling and entering their unique access code and PIN number, the parents would be prompted with automated questions concerning the Study subjects' daily drug experience, and directed to answer those questions non-verbally by pushing touch-tone buttons on their phones.  The Study protocol required that the Study subjects' parents themselves, not clinical investigators or site staff, respond to questions using the e-diary system.

19.     The CRO, acting on behalf of the Sponsor, agreed to pay clinical investigators and study sites for its work on the Study based largely on the number of subjects enrolled in the Study and the duration of time that the subjects remained in the Study.  Thus, the more subjects that were enrolled in the Study, the higher the potential income for the clinical investigator.

<u>**COUNT 1**</u>
**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 1349)**

1.     The General Allegation section of this Information is realleged and incorporated by reference as though fully set forth herein.

2.     Beginning in or around September 2013, and continuing at least through in or around April 2017, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

**YVELICE VILLAMAN-BENCOSME,**
**LISETT RAVENTOS,**
**MAYTEE LLEDO, and**
**JESSICA PALACIO,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others, known and unknown to the United

States Attorney, to commit certain offenses against the United States, that is to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by securing contracts with sponsors and CROs to conduct clinical trials, making materially false and fraudulent representations to sponsors, CROs, and the FDA concerning the clinical trials, including concerning subject eligibility for and participation in the clinical trials, and causing sponsors and CROs to make payments on the contracts in reliance upon materially false and fraudulent representations.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.      On or about October 25, 2013, **YVELICE VILLAMAN-BENCOSME** entered into a contract with the CRO, which was acting on behalf of the Sponsor, to conduct the Study. **VILLAMAN-BENCOSME** agreed to conduct the Study at the UM Research site. In return, the CRO, acting on behalf of the Sponsor, agreed to pay UM Research for its services.

5.      On or about September 13, 2013, **YVELICE VILLAMAN-BENCOSME** signed her name to a Form FDA 1572, agreeing to conduct the Study in accordance with the protocol and

to maintain adequate and accurate records, among other things. In October 2013, Sponsor hired UM Research to conduct a study of an investigational drug intended to treat pediatric asthma. The study was assigned the protocol number SAS115358 and was known as the Vestri study. The Vestri study was a six-month study that evaluated the safety and efficacy of an inhaled study drug in children between the ages of 4 and 11 with persistent asthma.

6.      Rather than recruit subjects who met all eligibility criteria, and administer the study procedures as required by the protocol, **YVELICE VILLAMAN-BENCOSME, LISETT RAVENTOS, MAYTEE LLEDO,** and **JESSICA PALACIO** falsified and fabricated the participation of subjects in the Study.

7.      The defendants knew that the FDA had the authority to conduct inspections of clinical investigators and that, as a part of such inspections, the FDA could review case histories and other records maintained by a clinical investigator. The defendants and their co-conspirators also knew that adverse inspectional findings by the FDA could be communicated to sponsors and contract research organizations, and could cause sponsors and contract research organizations to cease doing business with a clinical investigator.

8.      In order to prevent the Sponsor, the CRO, and the FDA from learning that the defendants had falsified the participation of subjects in the Study, **YVELICE VILLAMAN-BENCOSME, LISETT RAVENTOS**, and **JESSICA PALACIO** fabricated written case histories, so that the case histories falsely and fraudulently represented that subjects had participated in the Study according to the protocol, when, in truth and in fact, those subjects had not participated in the Study according to the protocol.

9.      **YVELICE VILLAMAN-BENCOSME** and **MAYTEE LLEDO** obtained personal identification information, such as copies of birth certificates and drivers' licenses, from

pediatric patient medical records maintained at **VILLAMAN-BENCOSME**'s private medical practice, Sacred Heart Medical Office P.A. **YVELICE VILLAMAN-BENCOSME, LISETT RAVENTOS, MAYTEE LLEDO,** and **JESSICA PALACIO** used this identification information to create and maintain case histories which falsely portrayed **VILLAMAN-BENCOSME's** pediatric patients as subjects in the Study.

10.     **YVELICE VILLAMAN-BENCOSME, LISETT RAVENTOS**, and **JESSICA PALACIO** caused false information to be entered in the case histories for the Study, to make it appear that subjects had, among other things, satisfied the eligibility criteria to participate in the Study, provided informed consent to participate in the Study, received a physical examination from a clinical investigator at UM Research, received the Study drug at UM Research, returned Study drug containers to UM Research, and received payment for visits to UM Research, when, in truth and in fact, and as **VILLAMAN-BENCOSME, RAVENTOS,** and **PALACIO** well knew, no such event had occurred.

11.     In order to conceal the fact that the subjects were not actually participating in the Study as required by the protocol, one or more defendants discarded, without using, the Study drug provided by the Sponsor, and **YVELICE VILLAMAN-BENCOSME, LISETT RAVENTOS**, and **JESSICA PALACIO** caused false documentation to be placed in the case histories representing that subjects were taking the Study drug as required by the protocol.

12.     In order to conceal the fact that the subjects were not actually participating in the Study as required by the protocol, **YVELICE VILLAMAN-BENCOSME** fabricated the content of case histories, falsely representing in case histories that she had performed physical examinations of subjects at the UM Research location as required by the Study protocol, when in fact, as **VILLAMAN-BENCOSME** well knew, **VILLAMAN-BENCOSME** did not perform

physical examinations on subjects at the UM Research location as required by the Study protocol, and these representations were false.

13.     In order to conceal the fact that the subjects were not actually participating in the Study as required by the protocol, **MAYTEE LLEDO** placed hundreds of telephone calls to the e-diary system for the Study and provided false and fictitious answers in response to questions about the subjects' daily drug usage and experience.

14.     The CRO, acting on behalf of the Sponsor, paid UM Research to conduct the Study. The CRO's payments, on behalf of the Sponsor, were deposited into the UM Research bank account, over which **LISETT RAVENTOS** and others had control.

15.     UM Research bank account funds were distributed to **YVELICE VILLAMAN-BENCOSME, LISETTE RAVENTOS, MAYTE LLEDO, JESSICA PALACIO**, and their co-conspirators for participation in the clinical trial fraud scheme.

16.     The defendants made, and caused others to make, numerous materially false and fraudulent statements to the Sponsor, the CRO, the FDA, and others, both orally and in writing, including, among other things, the following:

**<u>Materially False Statements</u>**

a.     That UM Research staff and **YVELICE VILLAMAN-BENCOSME** had conducted the Study in accordance with the protocol;

b.     That UM Research staff and **YVELICE VILLAMAN-BENCOSME** had obtained informed consent from subjects prior to their enrollment in the Study;

c.     That UM Research staff had conducted Study-related appointments with subjects at the UM Research location and in accordance with the Study protocol;

d.   That **YVELICE VILLAMAN-BENCOSME** had conducted physical examinations of subjects at the UM Research location and in accordance with the Study protocol;

e.   That UM Research staff had dispensed the Study drug to subjects;

f.   That UM Research staff had informed subjects of the e-diary system and instructed subjects to create unique access codes and PIN numbers for that system; and

g.   That parents of subjects had placed daily phone calls to the e-diary system as required by the Study protocol.

All in violation of Title 18, United States Code, Section 1349.

**COUNT 2**
**False Statements**
**(18 U.S.C. § 1001(a)(2))**

On or about April 25, 2017, in Miami-Dade County, in Southern District of Florida, in a matter within the jurisdiction of the United States Food and Drug Administration, an agency of the executive branch of the United States Government, the defendant,

**JESSICA PALACIO,**

did knowingly and willfully make a false, fictitious, and fraudulent statement and representation as to a material fact, in that the defendant represented in a signed affidavit that she had performed a screening visit for D.H. in the Study, when in truth and in fact, and as the defendant then and there well knew, she had not performed a screening visit for D.H., in violation of Title 18, United States Code, Section 1001(a)(2).

# FORFEITURE
## (18 U.S.C. § 981(a)(1)(C))

1.      The allegations of this Information are re-alleged and incorporated by reference as though fully set forth herein for alleging criminal forfeiture to the United States of certain property in which the defendants, **YVELICE VILLAMAN-BENCOSME, LISETT RAVENTOS, MAYTEE LLEDO,** or **JESSICA PALACIO,** has an interest.

2.      Upon conviction of a violation, or a conspiracy to violate, Title 18, United States Code, Section 1343, as alleged in this Information, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes, or is derived from proceeds traceable to such violation.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461.

for
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

GUSTAV W. EYLER
Director
U.S. Department of Justice
Consumer Protection Branch

for:
CLINT L. NARVER
JOSHUA D. ROTHMAN
JOCELYN C. HINES
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA**

v.

CASE NO._____

**Yvelice Villaman-Bencosme, et al.**

_____ Defendant._____/

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| ✓ | Miami | ___ Key West |
| ___ | FTL | ___ WPB ___ FTP |

New defendant(s)          Yes _____   No _____
Number of new defendants          _____
Total number of counts          _____

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:     (Yes or No)     Yes
     List language and/or dialect     Spanish

4.   This case will take   10   days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

     (Check only one)                                        (Check only one)

| I | 0 to 5 days | _____ | Petty | _____ |
|---|---|---|---|---|
| II | 6 to 10 days | ✓ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | ✓ |
| V | 61 days and over | _____ | | |

6.   Has this case previously been filed in this District Court?     (Yes or No)     No
     If yes: Judge _____     Case No. _____
     (Attach copy of dispositive order)
     Has a complaint been filed in this matter?     (Yes or No)     No
     If yes: Magistrate Case No. _____
     Related miscellaneous numbers:     18-mj-02659; 18-mj-3253-JJO
     Defendant(s) in federal custody as of _____
     Defendant(s) in state custody as of _____
     Rule 20 from the District of _____

     Is this a potential death penalty case? (Yes or No)     No

7.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?     Yes _____     No ✓

8.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     Yes _____     No ✓

9.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     Yes _____     No ✓

_____
CLINT L. NARVER, DOJ TRIAL ATTORNEY
COURT ID NO. A5502448

*Penalty Sheet(s) attached

REV 6/5/2020

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**      **YVELICE VILLAMAN-BENCOSME**
_____

**Case No:** _____

Count #:   1

___Title 18, United States Code, Section 1349_____

___Conspiracy to Commit Wire Fraud_____

**\*Max Penalty**:    Twenty (20) years' imprisonment_____

Count #: _____

_____

_____

\*Max Penalty: _____

Count #: _____

_____

_____

\*Max Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**      **LISETT RAVENTOS**

**Case No:** _____

Count #:   1

   Title 18, United States Code, Section 1349

   Conspiracy to Commit Wire Fraud

**\*Max Penalty:**    Twenty (20) years' imprisonment

Count #:

_____

_____

\*Max Penalty:

Count #:

_____

_____

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**          **MAYTEE LLEDO** _____

**Case No:** _____

Count #:   1

_____ Title 18, United States Code, Section 1349 _____

_____ Conspiracy to Commit Wire Fraud _____

**\*Max Penalty**:     Twenty (20) years' imprisonment _____

Count #:

_____

_____

\*Max Penalty: _____

Count #:

_____

_____

\*Max Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**        **JESSICA PALACIO**

**Case No:** _____

Count #:    1

   Title 18, United States Code, Section 1349

   Conspiracy to Commit Wire Fraud

**\*Max Penalty:**    Twenty (20) years' imprisonment

Count #:    2

   Title 18, United States Code, Section 1001(a)(2)

   False Statements

\*Max Penalty:    Five (5) years' imprisonment

Count #:

_____

_____

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| YVELICE VILLAMAN-BENCOSME, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| LISETT RAVENTOS, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| MAYTEE LLEDO, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.


Date: _____

_____
*Defendant's signature*


_____
*Signature of defendant's attorney*


_____
*Printed name of defendant's attorney*


_____
*Judge's signature*


_____
*Judge's printed name and title*